NICOLE CARTER,

    *Plaintiff*,

    v.

SHEIN US SERVICES, LLC,

    *Defendant*.

Civil Action No. 3:25-cv-10447-MGM

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL, FOR DISCOVERY SANCTIONS, AND TO EXTEND PHASE I DISCOVERY**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.    PERTINENT BACKGROUND...........................................................................3

      A.    PLAINTIFF'S CONSENT TO RECEIVE MESSAGES FROM
           DEFENDANT.........................................................................................3

      B.    PLAINTIFF'S COMPLAINT....................................................................5

      C.    PLAINTIFF'S DEFICIENT DISCOVERY RESPONSES ....................5

      D.    PLAINTIFF'S REFUSAL TO MEET AND CONFER........................10

III.    PLAINTIFF SHOULD BE COMPELLED TO AMEND HER INTERROGATORY
       RESPONSES AND TO SUPPLEMENT HER DOCUMENT PRODUCTION...............11

      A.    ISSUES 1 & 2: WHETHER PLAINTIFF CONSENTED TO RECEIVE
           TEXT MESSAGES FROM DEFENDANT, INCLUDING WHETHER
           CONSENT WAS EVER REVOKED. AND WHETHER THE TEXT
           MESSAGES WERE UNSOLICITED...................................................12

      B.    ISSUE 3: WHETHER PLAINTIFF'S NUMBER IS (OR WAS) ON THE
           MASSACHUSETTS OR NATIONAL DO NOT CALL REGISTRIES .............15

      C.    PLAINTIFF'S FURTHER LITIGATION MISCONDUCT .................17

IV.    REQUEST FOR SANCTIONS ........................................................................18

V.    CONCLUSION................................................................................................19

APPENDIX A .............................................................................................................A1

**Cases**

*Ahmed v. Rosenblatt*,
 118 F.3d 886 (1st Cir. 1997) .................................................................................18

*Bonomo v. Factory Mut. Ins. Co.*,
 No. 1:21-CV-11750-IT, 2023 WL 3934696 (D. Mass. June 9, 2023) ....................11

*Brook Vill. N. Assocs. v. Gen. Elec. Co.*,
 686 F.2d 66 (1st Cir. 1982) ...................................................................................11

*Katz v. Liberty Power Corp., LLC*,
 No. 18-CV-10506-ADB, 2020 WL 3492469 (D. Mass. June 26, 2020) ................15

*Kruskall v. Sallie Mae Serv., Inc.*,
 No. 15-CV-11780-DJC, 2016 WL 1056973 (D. Mass. Mar. 14, 2016) .................18

*In re Pac. Thomas Corp.*,
 715 F. App'x 778 (9th Cir. 2018) ..........................................................................11

*Pierce & Mandell, P.C. v. Pulsifer*,
 77 Mass. App. Ct. 1123, 2010 WL 3745631 (Sept. 28, 2010) ..............................18

*Tafari v. Gilmore*,
 No. 02CV403S, 2012 WL 5400946 (W.D.N.Y. Nov. 5, 2012)...............................11

*Vincent Lawrence v. SHEIN US Services, LLC, Lexington Motors, Inc., & Sierra
 Club*, C.A. No. 2484CV02856 (Mass. Super. Ct.) ......................................2, 4, 5, 9

*Xiao Wei Catering Linkage in Inner Mongolia Co. v. Inner Mongolia Xiao Wei
 Yang USA, Inc.*,
 No. CV 15-10114-DJC, 2018 WL 1718630 (D. Mass. Apr. 9, 2018) ....................11

**Statutes**

47 U.S.C. § 227(b)(1)(A) ................................................................................................12

Mass. G.L. c. 159C, § 1 .................................................................................................12

Mass. G.L. c. 159C, § 3 ............................................................................................12, 16

Mass. G.L. c. 93A .........................................................................................5, 14, 15, 17

Mass. Gen. Laws ch. 159C .............................................................................................8

## Other Authorities

201 C.M.R. § 12.03(5) ................................................................................................................16

Fed. R. Civ. P. 6(d) ......................................................................................................................6

Fed. R. Civ. P. 36(a)(3) ..........................................................................................................1, 11

Fed. R. Civ. 33(b)(2) ....................................................................................................................6

Fed. R. Civ. 34(b)(2)(A) ...............................................................................................................6

Fed. R. Civ. 36(a)(3) ....................................................................................................................6

Local Rule 7.1(a)(2) .............................................................................................................2, 6, 10

Local Rule 37.1 .......................................................................................................................6, 10

Defendant SHEIN US Services, LLC ("Defendant" or "SHEIN"), respectfully submits its Memorandum of Law in Support of Defendant's Motion to Compel, for Discovery Sanctions, and to Extend Phase I Discovery.

## I.    INTRODUCTION

This is a Telephone Consumer Protection Act ("TCPA") and Massachusetts Telemarketing Solicitation Act ("MTSA") litigation in which the *pro se* plaintiff, Nicole Carter ("Plaintiff"), has refused to even identity what text messages Defendant allegedly sent her. Her interrogatory answers are incomplete and evasive, failing to explain the basis for any of her conclusory and implausible allegations. She refused to produce documents in response to the majority of Defendant's requests, even those that merely sought the production of the text messages underlying her claims.[1] Incredibly, Plaintiff objected (among other dubious claims) that the disputed text messages are "not relevant" to her claims of receiving unsolicited text messages.

And despite alleging that Defendant sent "over 70" text messages to her while she was on the national and Massachusetts do not call lists, Plaintiff's document production consisted of only seven duplicative JPG/PNG picture files and one email. Notably, the email was from the National Do Not Call Registry and confirms that her number was not registered until *after* she filed her Complaint. She also "produced" portions of Defendant's own Bates-stamped production, including records from the Massachusetts Do Not Call List showing that that her number was not registered until January 2025 … not 3.5 years ago as alleged.

But Plaintiff's misconduct goes beyond discovery deficiencies. She produced the JPG/PNG files in response to Document Request No. 8, which requested copies of illegible screenshots included in the Complaint. She also cited those files in her answers to Interrogatory

---

[1] Plaintiff also failed to respond to Defendant's request for admissions within 33 days; therefore, the matters addressed therein have been deemed admitted. *See* Fed. R. Civ. P. 36(a)(3).

Nos. 7-8 as her *only* evidence that Plaintiff allegedly used a "short code" to falsify caller information and circumvent caller identification services. The problem is that the messages displayed in the JPG/PNG files screenshotted in her Complaint, produced natively by Plaintiff, and relied upon in her interrogatory answers, *are not text messages that were sent to Plaintiff*. She has now admitted that these text messages not sent to her but rather sent to a completely different person, a Mr. Vincent Lawrence, who filed his own TCPA and MTSA complaints against SHEIN three months before Plaintiff filed hers. [2] When confronted, Plaintiff admitted to using ChatGPT to mine Mr. Lawrence's complaints to draft her own, stating: "[U]sing Chatgpt is not illegal so I will continue using other complaints and if you see that I copy and paste somthing [sic] excuse me its [sic] not illegal." Plaintiff, however, has refused to explain how she came in possession of the *native* JPG/PNG files of text messages cited in Mr. Lawrence's pleadings.

After woefully failing to meet the bare minimum of her discovery obligations, Plaintiff had the audacity to file a motion for partial summary judgment (ECF Nos. 16-20), despite Defendant's stated objection given her discovery deficiencies, without engaging in a Rule 7.1(a)(2) conference, before the Court's scheduled pre-motion conference to discuss dispositive motions, before the close of fact discovery, before sitting for her deposition, before serving complete and non-evasive discovery responses, before so much as identifying what text messages are even at issue in this litigation, and before Defendant had any opportunity to seek discovery on the recently discovered issue of Plaintiff seeking damages for text messages that she admits were sent to someone else. In addition to compelling responses to the discovery requests identified below, Defendant requests

---

[2] That matter, from which SHEIN was dismissed in February of 2025, remains pending in Suffolk County Superior Court. *Vincent Lawrence v. SHEIN US Services, LLC, Lexington Motors, Inc., & Sierra Club*, C.A. No. 2484CV02856 (Mass. Super. Ct.) (removed and later remanded upon dismissal of federal claims, Case No. 1:24-cv-13002-MJJ (D. Mass.)).

monetary sanctions in the amount of $5,244, its estimate of reasonable attorneys' fees and costs associated in preparing this Motion. Defendant further respectfully contends that Plaintiff's admitted litigation misconduct warrants additional inquiry by this Court, which will otherwise be the subject of forthcoming motion practice by Defendant.

## II.  PERTINENT BACKGROUND

### A.  PLAINTIFF'S CONSENT TO RECEIVE MESSAGES FROM DEFENDANT

On February 23, 2021, Plaintiff viewed the promotion below advertising Defendant's SMS program:



(Ex. P (Def.'s Interrog. Resp.) No. 1.)[3] The promotion explicitly disclosed: "By signing up, you agree to our Terms & Privacy and to receive recurring automated promotion and personalized marketing text messages (e.g., car reminders) from SHEIN at the cell number used when signing up." (*Id.*) Plaintiff clicked on the "GET 15% OFF NOW when you sign up for texts" button on the advertisement above and was provided with a telephone number with which to sign up for SHEIN's SMS program. (*Id.*) Plaintiff then sent the following text message to the SHEIN phone number to confirm Plaintiff's consent to sign up for SHEIN's SMS program and to receive text messages from Defendant: "*Send this text to subscribe to recurring automated personalized marketing alerts (e.g. cart reminders) from SHEIN (ref: WwuJA).*" (*Id.*) Plaintiff received a text message confirming Plaintiff's consent to receiving marketing text messages, which read: "*SHEIN: Welcome! Msg & data rates may apply. Msg frequency varies. Reply HELP for help, STOP to cancel. Privacy: attnl.tv/p/cOu.*" (*Id.*) Another text message was sent from the SHEIN telephone number to Plaintiff that day, which read: "*SHEIN: Click this link for your 10% OFF coupon code: https://shein.attn.tv/l/BXL/emlFm.*" (*Id.*)

On March 23, 2023, Plaintiff *again* viewed the same advertisement promoting SHEIN's SMS program. (*Id.*) She *again* clicked on the "GET 15% OFF NOW when you sign up for texts" button on the advertisement. (*Id.*) Plaintiff then sent the following text message to the SHEIN telephone number to *again* consent to sign up for SHEIN's SMS program and to receive text messages from Defendant: "*Send this text as your signature to receive SHEIN mktg texts at this #. Consent not reqd 4 purchase.Msg data rates apply.Terms and Privacy apply (ref: qesLt).*" (*Id.*) Plaintiff then received a message confirming that she was already opted into Defendant's SMS

---

[3] All exhibits referenced herein are attached to the concurrently-filed Declaration of Brian J. Bosworth, Esq., in Support of Defendant's Motion to Compel (the "Bosworth Decl.").

program, which read: "*SHEIN: You are already subscribed. Click here to shop now: https://shein.attn.tv/cl/RZl.*" (*Id.*)

From the date that Plaintiff joined the SHEIN SMS program on February 23, 2021, until Defendant manually removed her from the program in February of 2025 after the filing of this lawsuit, Plaintiff never sent a "STOP" text message to the SHEIN telephone number or otherwise contacted SHEIN to revoke her express consent to receive text messages from Defendant. (*Id.*)

B.     PLAINTIFF'S COMPLAINT

Plaintiff nevertheless filed her Complaint in Massachusetts Superior Court, Hampden County, on or about January 27, 2025. Therein Plaintiff alleges violations of the TCPA, the MTSA, and, derivatively, G.L. c. 93A. (ECF No. 7 (State Court Record).) Defendant removed this action to the United States District Court for the District of Massachusetts on February 24, 2025. (ECF No. 1.) Defendant filed its Answer and Defenses on March 3, 2025. (ECF No. 5.)

Plaintiff alleges that beginning on June 7, 2021, Defendant has sent "over 70 … unsolicited text messages" to her cellular telephone without her written consent or for an emergency purpose, in violation of the TCPA, MTSA, and G.L. c. 93A. (*See, e.g.*, Compl. (ECF. No. 7) ¶¶ 1, 7-10, 15, 31, 41.) She also alleges that Defendant used an automatic telephone dialing system ("ATDS") in making these calls. (*Id.* ¶¶ 12, 28, 31.) She alleges that her telephone number was registered on both the Massachusetts Do Not Call List and the National Do Not Call List when Defendant texted her number from "6/23/21" to "10/08/23, and over 50 more times." (*Id.* ¶¶ 38, 52, 69, 71).

C.     PLAINTIFF'S DEFICIENT DISCOVERY RESPONSES

A telephonic Scheduling Conference was held on April 23, 2025. Plaintiff did not attend. (*See* ECF No. 12.) This Court subsequently issued a Scheduling Order which adopted Defendant's proposal for phased discovery. Pursuant thereto:

> Phase I discovery shall be limited to the following issues: (1) whether Plaintiff consented to receive text messages from Defendant, including whether consent was ever revoked; (2) whether the text messages were unsolicited; (3) whether Plaintiff's number is (or was) on the Massachusetts or national do not call registries; and (4) whether the text messages show any evidence of circumventing Plaintiff's use of caller identification services or devices.

(ECF No. 13 ¶ 1.) The Phase I discovery deadline is July 18, 2025. (*Id.* ¶ 4.) A status conference is scheduled for July 24, 2025, after the close of Phase I discovery, at which time the parties were supposed to inform the Court if they intended on moving for any Phase I issues. (*Id.* ¶ 5) Such motions were supposed to be filed thereafter by August 25, 2025. (*Id.* ¶ 6.)

On April 30, 2025, Defendant's counsel served upon Plaintiff: (1) Defendant's First Set of Phase I Interrogatories; (2) Defendant's First Set of Phase I Requests for Production of Documents; and (3) Defendant's First Set of Phase I Requests for Admission. (Ex. A.) Plaintiff's responses were due 30 days thereafter. *See* Fed. R. Civ. 34(b)(2)(A), 33(b)(2), 36(a)(3). With the three Rule 6(d) days, the due date fell on June 2, 2025. *See* Fed. R. Civ. P. 6(d).[4] Plaintiff did not serve any responses on that date. (Bosworth Decl. ¶ 6.) Nor did she seek an extension of time to respond from Defendant's counsel or the Court or otherwise contact Defendant in any manner. (*Id.*)

On June 5, 2025, undersigned counsel emailed Plaintiff pursuant to Local Rule 7.1(a)(2) and Local Rule 37.1 to request a telephonic discovery conference to discuss her overdue responses and Defendant's forthcoming motion to compel. (Ex. B p. 7.) Having received no response, counsel reiterated the request by email dated June 9, 2025. (*Id.* p. 6.)[5] Plaintiff finally responded

---

[4] Service was by email. (*See* Ex. C (Plaintiff email to Defendant's counsel: "I agree to accept service by email only, and I waive the requirement for delivery of hard copies by U.S. mail.").

[5] Plaintiff has throughout this litigation refused to correspond with Defendant's counsel by telephone. (*See, e.g.*, Ex. D at DEF-000016 ("[P]lease do not call my phone, only communicate with me through email so we have a record and there is no confusion thank you."). Plaintiff has reiterated this request repeatedly and even hung up on Defendant's counsel when he attempted to contact Plaintiff by telephone. (Bosworth Decl. ¶ 10.)

that day, stating only: "I am sending discovery by end of the day Thank you." (*Id*.) Of course, she did not. Another email from Defendant's counsel on June 10 went unanswered. (*Id*. p. 7.)

Finally, on June 11, 2025, 44 days after service, Plaintiff served her Responses and Objections to [Defendant]'s Requests for Admission, Responses to Defendant's First Set of Phase I Interrogatories, and Responses to First Set of Phase I Requests for Production of Documents. (*See* Exs. E-I.) The responses are plainly deficient. Plaintiff refused answer the majority of Defendant's requests, let alone completely and non-evasively, by repeating a near identical objection for every interrogatory, document request, and request for admission. (*See* Exs. F-H.) Plaintiff's deficient responses are addressed in detail below. (*See infra*, § III.)

Plaintiff also attached a "production" along with her deficient responses. One document was her Complaint. (*See* Ex. E.) Two others were from Defendant's own document production. (*See id*. ("DEF-000001-DEF-000046" and the "Massachusetts Do Not Call registration," produced by Defendant); Bosworth Decl. ¶ 11.) The only documents actually produced by Plaintiff were: (1) one email (Ex. I); and (2) six native JPG digital photograph files and eight native PNG files, showing largely duplicative text messages allegedly sent by Defendant, produced in response to Defendant's request for legible copies of the screenshots in Paragraph 8 of the Complaint (Exs. J-L). These documents, the only ones actually produced by Plaintiff, are disastrous for her case.

The one produced email is from the National Do Not Call Registry (Verify@donotcall.gov), which writes to Plaintiff:

> Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered you phone number ending in 5580 *on January 31, 2025*. Most telemarketers will be required to stop calling you 31 days from your registration date.

(Ex. I (emphasis added).) In other words, Plaintiff registered her telephone number on the National Do Not Call Registry four days *after* she filed her Complaint on January 27, 2025. Yet Plaintiff

repeatedly alleged in her Complaint that her telephone number was registered on both the National Do Not Call List and the Massachusetts Do Not Call List when Defendant began texting her 3.5 years ago in June of 2021. (*See* Compl. (ECF. No. 7) ¶ 52 ("The Defendants [sic] engaged in unfair and deceptive practices … when they failed to register like other lawful telemarketers before placing telemarketing calls to the plaintiff without consent while I was on the National & State Do Not Call Registry"); *id.* ¶ 38 ("Defendants [sic] violated Mass. Gen. Laws ch. 159C by sending unauthorized telemarketing communications to plaintiff's telephone number registered on the Massachusetts State DNC"); *id.* ¶¶ 69, 71).

This was false, and Plaintiff knew it. Plaintiff has now admitted in both her interrogatory and request for admission responses that not only was her number not registered on the National Do Not Call List until January 31, 2025 (four days after the filing of her Complaint), but also that her number was not registered on the Massachusetts Do Not Call List until January 1, 2025 (mere weeks before the filing of her Complaint and years after the complained-of text messages). (*See* Ex. G. at Interrog. Nos. 9 & 10; Ex. F. at Request Nos. 16 & 17.)

It gets worse. Again, Plaintiff produced native JPG/PNG picture files showing text messages of purported text messages from Defendant to Plaintiff, in response to Defendant's request for legible copies of the screenshots in Paragraph 8 of the Complaint, which allegedly show text messages sent "within a 12 month period from defendant Shein." (*See* Ex. H at No. 8; Exs. J-L.) Plaintiff also answered Interrogatory Nos. 7-8 by citing these documents as her *only* evidence that Plaintiff allegedly used a "short code" to falsify caller information and circumvent caller identification services. (*See* Ex. G at Nos. 7-8.) Except those are not text messages sent to Plaintiff or to Plaintiff's telephone number. And she has now admitted as much.

Unfortunately for Plaintiff, Defendant's counsel was very familiar with these messages, as they were the basis of a prior TCPA/MTSA lawsuit against SHEIN brought by Mr. Vincent Lawrence, who filed his suit only three months before Plaintiff filed hers. In fact, not only are the text messages screenshotted in Mr. Lawrence's Verified Complaint (Ex. Q) and Verified Amended Complaint (Ex. R) identical in substance (content, sequence, timestamp) to the text messages produced by Plaintiff, but the photographs themselves are identical in the precise positioning of the screen scroll, the angle of the cell phone, the WiFi signal strength, the battery charge, and even the glare on the phone's screen. (*Compare* Exs. J-L *with* Ex. Q ¶ 41 & Ex. R ¶ 54.) A side-by-side comparison of Plaintiff's production and Mr. Lawrence's complaints is included in <u>Appendix A</u> hereto. There can be no dispute that they are the exact same photographs.

By way of a letter emailed on June 23, 2025, Defendant's counsel raised this issue with Plaintiff and requested an immediate explanation. (*See* Ex. N.) Plaintiff responded by email the next day, defiantly stating in part:

> I wanted to share that in preparing and structuring my claims, I've closely studied complaints filed in similar consumer protection cases, particularly *Vincent Lawrence v. Shein* and *Doane v. Benefytt Technologies, Inc.* This method has been extremely helpful in understanding how other plaintiffs have successfully framed their arguments … To be clear, my approach involves referencing and building upon publicly filed complaints that assert the same or substantially similar causes of action. This practice is both common and permissible in legal drafting, especially where the statutory framework and factual patterns overlap and using Chatgpt is not illegal so I will continue using other complaints and <u>if you see that I copy and paste something excuse me its not illegal</u>.

(Ex. O (emphasis added).) Plaintiff thus does not dispute that she "cop[ied] and paste[d]" screenshots of texts sent to Mr. Lawrence from Mr. Lawrence's pleadings into her own Complaint, and does not deny that she then produced to Defendant native JPG/ PNG files of those screenshots in this litigation, and cited those native files in her interrogatory responses.

How Plaintiff came into possession of those *native* files is still unclear, as they are not part of Mr. Lawrence's public pleadings.

### D. PLAINTIFF'S REFUSAL TO MEET AND CONFER

Back on June 11, 2025, Defendant's counsel immediately requested a telephonic discovery conference pursuant to Local Rule 7.1(a)(2) and Local Rule 37.1 to discuss Plaintiff's deficient responses and Defendant's forthcoming motion to compel. (Ex. B p. 4.) Plaintiff requested further detail as to the claimed deficiencies. (*Id*. p. 2-4.) She also confirmed the undersigned's long-held suspicion: that every pleading, filing, discovery request, discovery response, and correspondence submitted by Plaintiff in this litigation was created by ChatGPT:

> And yes, for full transparency, I do use tools like ChatGPT to assist in drafting legal documents, which I left things on here so you won't think someone else is writing it nope https://chatgpt.com/ helps me. I will use https://chatgpt.com to write my partial summary judgment in 30 seconds I will edit it and send to you shortly and I will win the Motion for Summary Judgment also I will have https://chatgpt.com write me another set of discovery request in 5 seconds and send to you.

(*Id*. p. 3; *see also id.* p. 1 ("…i am still editing my summary judgment Chatgpt created for me … thank God for Chatgpt A i"); Ex. M p. 2 ("OK, well I am sending out the Partial Motion for Summary Judgment tomorrow , I am just have https://chatgpt.com go over the memo and references"); *id*. p. 1 ("I Love ChatGpt"); Ex. O ("…using Chatgpt is not illegal so I will continue using other complaints and if you see that I copy and paste somthing excuse me its not illegal").

On June 17, 2025, Defendant's counsel provided a further detailed summary of the deficiencies in Plaintiff's Responses to Defendant's First Set of Phase I Interrogatories and Responses to First Set of Phase I Requests for Production of Documents. (Ex. B p. 1-2; Ex. M. p. 3-4.) Plaintiff was also put on notice that because she failed to respond to Defendant's First Set of Phase I Requests for Admission within 33 days, the matters addressed therein have been deemed

admitted as a matter of law. (*Id.*)[6] *See* Fed. R. Civ. P. 36(a)(3). Plaintiff responded that day, "I

cant have those response by the 19th i can have by next week," which counsel understood to be a

representation that she would a supplement her discovery responses and production. (Ex. B p. 1;

Ex. M. p. 3.) Defendant rescheduled Plaintiff's deposition, which was noticed for June 20, 2025,

based on Plaintiff's representation of forthcoming amended discovery responses and supplemental

document production. (Ex. M. p. 2.)

A week later, on June 24, 2025, Defendant's counsel requested an update on Plaintiff's

amended discovery responses and supplemental document production. (Ex. B p. 1.) Plaintiff never

responded and, as of the filing of this Motion, has not served any amended discovery responses or

supplemented her "document production." (Bosworth Decl. ¶ 20.)

## III. PLAINTIFF SHOULD BE COMPELLED TO AMEND HER INTERROGATORY RESPONSES AND TO SUPPLEMENT HER DOCUMENT PRODUCTION

Defendant's discovery requests seek basic, foundational documents and information

central to Plaintiff's causes of action and directly relevant to the articulated Phase I issues. Plaintiff

---

[6] Plaintiff's otherwise deficient responses to Defendant's First Set of Phase I Requests for Admission are therefore not a subject of this Motion. Since Rule 36 is self-executing, no motion to compel is necessary. *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."); *Brook Vill. N. Assocs. v. Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982) ("[I]f a party fails timely to answer a request for admissions, the requested items are deemed admitted" and "[a]ny matter thus admitted under the Rule is conclusively established"); *In re Pac. Thomas Corp.*, 715 F. App'x 778, 779 (9th Cir. 2018) ("Rule 36 is self-executing, meaning that a party admits a matter by failing to serve a response to the request within thirty days; the opposing party does not have to file a motion to deem the matter admitted.") (citing Fed. R. Civ. P. 36(a)(3)); *see also Tafari v. Gilmore*, No. 02CV403S, 2012 WL 5400946, at *2 (W.D.N.Y. Nov. 5, 2012) ("Generally, it has been held that Rule 36 is self-executing, and that it is unnecessary for the Court to deem a matter admitted."); *Bonomo v. Factory Mut. Ins. Co.*, No. 1:21-CV-11750-IT, 2023 WL 3934696, at *4 (D. Mass. June 9, 2023); *Xiao Wei Catering Linkage in Inner Mongolia Co. v. Inner Mongolia Xiao Wei Yang USA, Inc.*, No. CV 15-10114-DJC, 2018 WL 1718630, at *3 (D. Mass. Apr. 9, 2018).

repeated near verbatim the same objection to each and every interrogatory, request for production, and request for admission that she did not want to answer:

> I object to this request because it's not relevant, it doesn't fit the limited discovery allowed by the Court. The judge only approved a narrow set of questions, and this one goes beyond that. In my Verified complaint I stated that I am the regular user. The judge approved: Phase I discovery shall be limited to the following issues: (1) whether Plaintiff consented to receive text messages from Defendant, including whether consent was ever revoked; (2) whether the text messages were unsolicited; (3) whether Plaintiffs number is (or was) on the Massachusetts or national do not call registries; and (4) whether the text messages show any evidence of circumventing Plaintiffs use of caller identification services or devices.

(*See* Exs. F-H.) Plaintiff's claim that this Court "only approved a narrow set of questions" is, of course, incorrect. It approved a set of *issues*. (*See* ECF No. 13 ¶ 1.) Defendant's discovery requests properly sought documents and information directly related to those issues.

For sake of efficiency, Plaintiff's deficient responses are grouped below by Phase I issue.

A.     ISSUES 1 & 2: WHETHER PLAINTIFF CONSENTED TO RECEIVE TEXT MESSAGES FROM DEFENDANT, INCLUDING WHETHER CONSENT WAS EVER REVOKED. AND WHETHER THE TEXT MESSAGES WERE UNSOLICITED

The first two Phase I issues are: "(1) whether Plaintiff consented to receive text messages from Defendant, including whether consent was ever revoked; [and] (2) whether the text messages were unsolicited." (ECF No. 13 ¶ 1.) Call and text messages made "with the prior express consent of the called party" do not violate the TCPA. 47 U.S.C. § 227(b)(1)(A). And the MTSA applies only to calls and texts that are "unsolicited." G.L. c. 159C, § 1 ("Unsolicited telephonic sales call" means "a telephonic sales call other than a call made: (i) in response to an express written or verbal request of the consumer called" or "(iii) to an existing customer …"); *id*. § 3 ("A telephone solicitor shall not make or cause to be made an unsolicited telephonic sales call to a consumer.."). Each of the discovery requests listed below is directly relevant to these Phase I issues:

> **INTERROGATORY NO. 1**: Identify the date that You were assigned the Telephone Number (413-883-5580).

**RESPONSE NO. 1**: I object to this request because it's not relevant, it doesn't fit the limited discovery allowed by the Court. The judge only approved a narrow set of questions, and this one goes beyond that. In my Verified complaint I stated that I am the regular user. The judge approved: Phase I discovery shall be limited to the following issues: (1) whether Plaintiff consented to receive text messages from Defendant, including whether consent was ever revoked; (2) whether the text messages were unsolicited; (3) whether Plaintiff's number is (or was) on the Massachusetts or national do not call registries; and (4) whether the text messages show any evidence of circumventing Plaintiffs use of caller identification services or devices.

**INTERROGATORY NO. 2**: Identify any time period(s) from February 15, 2021, through February 15, 2025, during which the Telephone Number (413-883-5580) was not assigned to You.

**RESPONSE NO. 2**: [Identical Response]

**DOCUMENT REQUEST NO. 2**: Documents sufficient to prove that the Telephone Number (413-883-5580) belongs to and is assigned to you.

**RESPONSE NO. 2**: I object to this request because it's not relevant, it doesn't fit the limited discovery allowed by the Court. The judge only approved a narrow set of questions, and this one goes beyond that. In my Verified complaint I stated that the telephone number was mine. The judge approved: Phase I discovery shall be limited to the following issues: (1) whether Plaintiff consented to receive text messages from Defendant, including whether consent was ever revoked; (2) whether the text messages were unsolicited; (3) whether Plaintiffs number is (or was) on the Massachusetts or national do not call registries; and (4) whether the text messages show any evidence of circumventing Plaintiffs use of caller identification services or devices.

**DOCUMENT REQUEST NO. 3**: Documents sufficient to prove that You are the regular user of the Telephone Number (413-883-5580).

**RESPONSE NO. 3**: [Identical Response]

**DOCUMENT REQUEST NO. 4**: Documents sufficient to prove the date that You were first assigned the Telephone Number (413-883-5580).

**RESPONSE NO. 4**: [Identical Response]

(Ex. G at Nos. 1-2; Ex. H at Nos. 3-4.)

Interrogatory Nos. 1-2 and Document Request Nos. 2-4 merely seek confirmation that Plaintiff was in fact the user of the telephone number at issue in this lawsuit (413-883-5580), and at what point in time she acquired that number. Defendant is entitled to confirmation that Plaintiff

was in fact the user of the number, as she conclusorily alleges in her Complaint. Particularly now that Plaintiff has denied sending the February 23, 2021, text message in which she consented to receive text messages from Defendant. (*See* ECF No. 18 (Affidavit of Nicole Carter) ¶ 7 ("Defendant claims that I have prior express written consent by clicking a 'Get 15% Off' offer. I deny giving such consent …"). And now that Plaintiff has admitted that her Complaint and interrogatory responses rely on text messages that were sent to someone else. (*See infra*, § II.C.)

**INTERROGATORY NO. 3**: Identify and describe by date, time, and content all text messages and calls sent from SHEIN to You from February 15, 2021, through February 15, 2025.

**RESPONSE NO. 3**: I object to this request because it's not relevant, it doesn't fit the limited discovery allowed by the Court. The judge only approved a narrow set of questions, and this one goes beyond that. In my Verified complaint I stated that I am the regular user. The judge approved: Phase I discovery shall be limited to the following issues: (1) whether Plaintiff consented to receive text messages from Defendant, including whether consent was ever revoked; (2) whether the text messages were unsolicited; (3) whether Plaintiffs number is (or was) on the Massachusetts or national do not call registries; and (4) whether the text messages show any evidence of circumventing Plaintiffs use of caller identification services or devices

**INTERROGATORY NO. 4**: Of those text messages or calls identified by You in response to Interrogatory No. 3, identify all those which You allege were made in violation of the TCPA, MTSA, and/or Chapter 93A.

**RESPONSE NO. 4**: [Identical Response]

**INTERROGATORY NO. 5**: Identify and describe by date, time, and content all text messages and/or calls sent by You to SHEIN from February 15, 2021, through February 15, 2025.

**RESPONSE NO. 5**: [Identical Response]

**DOCUMENT REQUEST NO. 6**: All text messages and/or calls sent from SHEIN to You from February 15, 2021, through February 15, 2025.

**RESPONSE NO. 6**: I object to this request because it's not relevant, it discovery allowed by the Court. The judge only approved a narrow set of questions, and this one goes beyond that. When plaintiff receives the file which SHEIN refused to produce. I will supplement my answer with the documents. Also attached is 152 text messages without any opt out attached that SHEIN produced.

**DOCUMENT REQUEST NO. 7:** All text messages and/or calls sent from You to SHEIN from February 15, 2021, through February 15, 2025.

**RESPONSE NO. 7:** : I object to this request because it's not relevant, asks for too much information, and doesn't fit the limited discovery allowed by the Court. The judge only approved a narrow set of questions, and this one goes beyond that. In my Verified complaint I stated that I am the regular user. The judge approved: Phase I discovery shall be limited to the following issues: (1) whether Plaintiff consented to receive text messages from Defendant, including whether consent was ever revoked; (2) whether the text messages were unsolicited; (3) whether Plaintiff's number is (or was) on the Massachusetts or national do not call registries; and (4) whether the text messages show any evidence of circumventing Plaintiffs use of caller identification services or devices.

(Ex. G at Nos. 3-5; Ex. H at Nos. 6-7.)

Defendant's Interrogatory Nos. 3-5 and Document Request Nos. 6-7 seek documents and information concerning the text messages sent to/from Defendant and Plaintiff and identification of which of those Plaintiff alleges were made in violation of the TCPA, MTSA, and/or G.L. c. 93A. Identification of the messages underlying TCPA cases is, of course, foundational discovery and often the subject of allowed motions to compel. *See Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2020 WL 3492469, at *3 (D. Mass. June 26, 2020) ("Courts often permit discovery of records related to the telephone numbers at issue in TCPA cases.") (collecting cases). Plaintiff's failure to answer these requests is inexcusable. Defendant is entitled to know what messages Plaintiff is relying upon. Especially because Plaintiff has both claimed other people's messages as her own and appears to selectively choose which messages produced by Defendant she will adopt and which she will disavow. Defendant is entitled to clarification.

B.     ISSUE 3: WHETHER PLAINTIFF'S NUMBER IS (OR WAS) ON THE MASSACHUSETTS OR NATIONAL DO NOT CALL REGISTRIES

The third Phase I issue is "whether Plaintiff's number is (or was) on the Massachusetts or national do not call registries." (ECF No. 13 ¶ 1.) The MTSA prohibits telephone solicitors from making "unsolicited" telephonic sales calls to a consumer "if the consumer's name and telephone

number appear on the then current quarterly [Massachusetts Do Not Call List]." G.L. c. 159C, §

3. The Massachusetts Do Not Call List incorporates the names and telephone numbers of

Massachusetts consumers who enroll in the National Do Not Call Registry. 201 C.M.R. § 12.03(5).

Each of the interrogatories below seek only this basic information:

> **INTERROGATORY NO. 11**: Identify any time period(s) from February 15, 2021, through February 15, 2025, during which the Telephone Number (413-883-5580) was not registered on the Massachusetts Do Not Call List.

> **RESPONSE NO. 11**: I object to this request because it's not relevant, it doesn't fit the limited discovery allowed by the Court. The judge only approved a narrow set of questions, and this one goes beyond that. In my Verified complaint I stated that I am the regular user. The judge approved: Phase I discovery shall be limited to the following issues: (1) whether Plaintiff consented to receive text messages from Defendant, including whether consent was ever revoked; (2) whether the text messages were unsolicited; (3) whether Plaintiffs number is (or was) on the Massachusetts or national do not call registries; and (4) whether the text messages show any evidence of circumventing Plaintiffs use of caller identification services or devices.

> **INTERROGATORY NO. 12**: Identify any time period(s) from February 15, 2021, through February 15, 2025, during which the Telephone Number (413-883-5580) was not registered on the National Do Not Call Registry.

> **RESPONSE NO. 12**: [Identical response]

> **INTERROGATORY NO. 13**: Of those text messages or calls identified in Interrogatory No. 3, identify those which were sent during the time the number was not registered on the National Do Not Call Registry.

> **RESPONSE NO. 13**: [Identical response]

> **INTERROGATORY NO. 14**: Identify those which were sent while the number was not registered on the Massachusetts Do Not Call List.

> **RESPONSE NO. 14**: [Identical response]

(Ex. G at Nos. 11-14.)

Plaintiff did answer Interrogatory Nos. 9 and 10, which asked Plaintiff to identify the

effective dates that her telephone number (413-883-5580) was registered on the Massachusetts Do

Not Call List and the National Do Not Call List, respectively. (*See* Ex. G No. 9 (answering

"January 1, 2025") & No. 10 (answering "January 31, 2025").) Interrogatory Nos. 11-14 merely request Plaintiff to confirm which of the text messages that form the basis of her Complaint were sent during the time that her telephone number was registered on either the Massachusetts Do Not Call List or the National Do Not Call List. This is of course directly relevant to Phase I. The answer is likely going to be: "None of them." But Defendant is absolutely entitled to obtain that answer from Plaintiff – in writing, signed, and under the penalty of perjury. Plaintiff cannot avoid answering interrogatories just because they are devastating to her case.

C.  PLAINTIFF'S FURTHER LITIGATION MISCONDUCT

Defendant further requests that the Court compel Plaintiff to produce documents in response to the Requests identified below, particularly in light of Plaintiff's recent admission that her Complaint contains screenshots of text messages that were sent to not to her and not to her telephone number, but rather to a different person who had previously sued SHEIN, and that she produced native JPEG/PNG files of these screenshots in discovery and relied upon them to answer multiple interrogatories. (*See supra*, § II.C.)

> **REQUEST NO. 23**: All documents and correspondence between You and any individual who has previously filed a lawsuit against SHEIN alleging a violation of either the Telephone Consumer Protection Act, Massachusetts Telemarketing Solicitation Act, and/or Chapter 93A concerning any of the Phase I Issues.
>
> **RESPONSE NO. 22-24**: I object to this request because it's not relevant, it doesn't fit the limited discovery allowed by the Court. The judge only approved a narrow set of questions, and this one goes beyond that. In my Verified complaint I stated that I am the regular user. The judge approved: Phase I discovery shall be limited to the following issues: (1) whether Plaintiff consented to receive text messages from Defendant, including whether consent was ever revoked; (2) whether the text messages were unsolicited; (3) whether Plaintiffs number is (or was) on the Massachusetts or national do not call registries; and (4) whether the text messages show any evidence of circumventing Plaintiffs use of caller identification services or devices. Plaintiff will not be producing any documents for 22-24 its outside the court orders.

(Ex. H at No. 23.)

At a minimum, Defendant respectfully requests that the Court compel production of all documents and communications between Plaintiff and Mr. Lawrence concerning Defendant. Plaintiff's feeble excuse that she mined publicly-available pleadings does not explain how she came in possession of *native* files of the screenshots reproduced in Mr. Lawrence's complaints. Given that these stolen text messages are also reproduced in Paragraph 8 of her Complaint, and that Plaintiff has also admitted to lying in her Complaint when alleging that her telephone number was registered on the Massachusetts Do Not Call List and the National Do Not Call List, Defendant respectfully requests that Plaintiff be ordered to inform the Court how she came in possession of these files and that the Court consider additional sanctions (above and beyond those requested herein) based on her responses.

## IV.    REQUEST FOR SANCTIONS

Given the severity and willfulness of the above-described conduct, Defendant respectfully requests that the Court award Defendant its reasonable attorneys' fees associated in drafting this Motion, estimated to be $5,244 for 12 hours of work. (*See* Bosworth Decl. ¶ 26.) To be clear, Plaintiff's *pro se* status is no excuse for her blatant disregard for her discovery obligations and brazen litigation misconduct. *See Kruskall v. Sallie Mae Serv., Inc.*, No. 15-CV-11780-DJC, 2016 WL 1056973, at * 1 (D. Mass. Mar. 14, 2016) ("*[P]ro se* litigants must comply with procedural and substantive law."); *Pierce & Mandell, P.C. v. Pulsifer*, 77 Mass. App. Ct. 1123 (Table), 2010 WL 3745631, at *1 (Sept. 28, 2010) ("[Plaintiff]'s pro se status did not exempt him from the requirement that he follow the rules and orders of the court and respect its authority and processes"). The policy behind holding *pro se* plaintiffs to a less stringent standard "is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). It does not permit a *pro se* plaintiff to make misstatements of fact in a pleading and to then rely on evidence she knows to be false.

## V.  CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court allow its Motion to Compel, for Sanctions, and to Extend Phase I Discovery.

Respectfully Submitted,

**SHEIN US SERVICES, LLC**

By its attorneys,

*/s/ Brian J. Bosworth*
Brian J. Bosworth (BBO # 685163
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
(617) 648-2800
(617) 433-5022 (fax)
BBosworth@Hunton.com

Dated:  July 3, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of July, 2025, a true and correct copy of this document was electronically filed with the Clerk of Court through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") pursuant to Local Rule 5.4(c). A true and correct copy of the foregoing was also served by email upon Plaintiff Nicole Carter at the address and email address below:

Nicole Carter
16 Rochelle Street
Springfield, MA 01109
Nicolecarter7440@gmail.com

*/s/ Brian J. Bosworth*
Brian J. Bosworth





Lawrence Verified Complaint
(Ex. Q ¶ 41)

Carter Production (Ex. K, Pictures 3 & 5.)





Lawrence Verified Complaint
(Ex. Q ¶ 41)

Carter Production (Ex. K, Picture 2; Ex. L, Picture 4.)



Lawrence Verified Complaint
(Ex. Q ¶ 41)



Carter Production (Ex. J, Picture 4; Ex. K, Picture 1.)



Lawrence Verified Complaint
(Ex. Q ¶ 41)



Carter Production (Ex. J, Picture 1; Ex. L, Picture 1.)



Lawrence Verified Complaint
(Ex. Q ¶ 41)



Carter Production (Ex. J, Picture 2; Ex. L, Picture 2.)





Lawrence Verified Complaint
(Ex. Q ¶ 41)



Carter Production (Ex. J, Picture 3; Ex. L, Picture 3.)





Carter Production (Ex. J, Picture 5; Ex. K, Picture 4.)

Lawrence Verified Am. Complaint
(Ex. R ¶ 54)